# EXHIBIT A

CERTIFIED TRUE COPY

FIXED RATE NOTE -- CLOSED END
(HOME EQUITY CONVERSION)

STATE OF PA

October 01, 2012

PROPERTY ADDRESS

1851 MEADOWBROOK ROAD
ABINGTON, PA 19001
MONTGOMERY COUNTY

FHA Case Number:

MIN Number:

1. **DEFINITIONS**
   "Borrower" means each person signing at the end of this Note. "Lender" means New Day Financial, LLC and its successors and assigns. "Secretary" means the Secretary of Housing and Urban Development or his or her authorized representatives.

2. **BORROWER'S PROMISE TO PAY; INTEREST**
   In return for amounts to be advanced by Lender up to a maximum principal amount of Four Hundred Thousand Five Hundred and 00/100 Dollars (U.S. $400,500.00), to or for the benefit of Borrower under the terms of a Home Equity Conversion Loan Agreement dated October 01, 2012 ("Loan Agreement"), Borrower promises to pay to the order of Lender a principal amount equal to the sum of all Loan Advances made under the Loan Agreement with interest. All amounts advances by Lender, plus interest, if not paid earlier, are due and payable on March 10, 2083. Interest will be charged on unpaid principal at the rate of Five and 06/100's percent (5.060%) per year until the full amount of principal has been paid. Accrued interest shall be added to the principal balance as a Loan Advance at the end of each month and shall likewise thereafter bear interest.

3. **PROMISE TO PAY SECURED**
   Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." That Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

4. **MANNER OF PAYMENT**
   (A) Time
   Borrower shall pay all outstanding principal and accrued interest to Lender upon receipt of a notice by Lender requiring immediate payment in full, as provided in Paragraph 6 of this Note.

   (B) Place
   Payment shall be made at 8171 Maple Lawn Blvd, Suite 300, Fulton, MD 20759 or at such other place as Lender may designate in writing by notice to Borrower.

   (C) Limitation of Liability
   Borrower shall have no personal liability for payment of this Note. Lender shall enforce the debt only through sale of the Property covered by the Security Instrument ("Property"). If the Note is assigned to the Secretary, the Borrower shall not be liable for any difference between the mortgage insurance benefits paid to Lender and the outstanding indebtedness, including accrued interest, owed by Borrower at the time of the assignment.

5. **BORROWER'S RIGHT TO PREPAY**
   A Borrower has the right to pay the debt evidenced by this Note, in whole or in part, without charge or penalty. Any amount of debt prepaid will first be applied to reduce the principal balance of the Second Note described in Paragraph 10 of this Note and then to reduce the principal balance of this Note.

   All prepayments of the principal balance shall be applied by Lender as follows:

   First, to that portion of the principal balance representing aggregate payments for mortgage insurance premiums;

   Second, to that portion of the principal balance representing aggregate payments for servicing fees;

   Third, to that portion of the principal balance representing accrued interest due under the Note; and

   Fourth, to the remaining portion of the principal balance.

   Prepayment amounts will not be made available to Borrower and prepayments will not increase the amount available to Borrower for Loan Advances.

6. **IMMEDIATE PAYMENT IN FULL**
   (A) Death or Sale
   Lender may require immediate payment in full of all outstanding principal and accrued interest if:

   (i) A Borrower dies and the Property is not the principal residence of at least one surviving Borrower, or

   (ii) All of a Borrower's title in the Property (or his or her beneficial interest in a trust owning all or part of the Property) is sold or otherwise transferred and no other Borrower retains (a) title to the Property in fee simple (b) a leasehold under a lease for not less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower, or (c) a life estate in the Property (or retains a beneficial interest in a trust with such an interest in the Property).

*1st Fixed Note (closed)*

© Bay Docs, Inc. 06/10

1

(B) Other Grounds
Lender may require immediate payment in full of all outstanding principal and accrued interest, upon approval by an authorized representative of the Secretary, if:

(i) The Property ceases to be the principal residence of a Borrower for reasons other than death and the Property is not the principal residence of at least one other Borrower;

(ii) For a period of longer than twelve (12) consecutive months, a Borrower fails to physically occupy the Property because of physical or mental illness and the Property is not the principal residence of at least one other Borrower; or

(iii) An obligation of the Borrower under the Security Instrument is not performed.

(C) Payment of Costs and Expenses
If Lender has required immediate payment in full, as described above, the debt enforced through sale of the Property may include costs and expenses, including reasonable and customary attorney's fees associated with enforcement of this Note to the extent not prohibited by applicable law. Such fees and costs shall bear interest from the date of disbursement at the same rate as the principal of this Note.

(D) Trusts
Conveyance of a Borrower's interest in the Property to a trust which meets the requirements of the Secretary, or conveyance of a trust's interest in the Property to a Borrower, shall not be considered a conveyance for purposes of this Paragraph. A trust shall not be considered an occupant or be considered as having a principal residence for purposes of this Paragraph.

7. WAIVERS
Borrower waives the rights of presentment and notice of dishonor. "Presentment" means the right to require Lender to demand payment of amounts due. "Notice of dishonor" means the right to require Lender to give notice to other persons that amounts due have not been paid.

8. GIVING OF NOTICES
Unless applicable law requires a different method, any notice that must be given to Borrower under this Note will be given by delivering it or by mailing it by first class mail to Borrower at the Property Address above or at a different address if Borrower has given Lender a notice of Borrower's different address.

Any notice that must be given to Lender under this Note will be given by first class mail to Lender at the address stated in Paragraph 4(B) or at a different address if Borrower is given a notice of that different address.

9. OBLIGATIONS OF PERSONS UNDER THIS NOTE
If more than one person signs this Note, each person is fully obligated to keep all of the promises made in this Note. Lender may enforce its rights under this Note only through sale of the Property.

10. RELATIONSHIP TO SECOND NOTE
(A) Second Note
Because Borrower will be required to repay amounts which the Secretary may make to or on behalf of Borrower pursuant to Section 255(i)(1)(A) of the National Housing Act and the Loan Agreement, the Secretary has required Borrower to grant a Second Note to the Secretary.

(B) Relationship of Secretary Payments to this Note
Payments made by the Secretary shall not be included in the debt due under this Note unless:

(i) This Note is assigned to the Secretary; or

(ii) The Secretary accepts reimbursements by the Lender for all payments made by the Secretary.

If the circumstances described in (i) or (ii) occur, then all payments made by the Secretary, including interest on the payments, shall be included in the debt.

(C) Effect on Borrower
Where there is no assignment or reimbursement as described in (B)(i) or (ii) and the Secretary makes payments to Borrower, then Borrower shall not:

(i) Be required to pay amounts owed under this Note until the Secretary has required payment in full of all outstanding principal and accrued interest under the Second Note held by the Secretary, notwithstanding anything to the contrary in Paragraph 6 of this Note; or

(ii) Be obligated to pay interest or shared appreciation under this Note at any time, whether accrued before or after the payments by the Secretary, and whether or not accrued interest has been included in the principal balance of this Note, notwithstanding anything to the contrary in Paragraph 2 of this Note or any Allonge to this Note.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Note.

_____    10/01/2012
BOHDAN MAKUCH (Borrower)              Date

1st Fixed Note (closed)                    © Bay Docs, Inc. 06/10

2

# Allonge

| | |
|---|---|
| Loan Number: | ▮▮▮▮ |
| FHA Case Number: | ▮▮▮▮ |
| Borrower Name(s): | Bohdan Makuch |
| Property Address: | 1851 Meadowbrook Rd<br>Abington PA 19001 |
| Note/Loan Amount: | $400,500.00 |
| Note/Loan Date: | 10/1/2012 |

*PAY TO THE ORDER OF:*

Urban Financial of America, LLC

WITHOUT RECOURSE

Company Name: New Day Financial

Signature: *[signature]*

Name: Andrea Wade

Title: Assistant Vice President

# Allonge

| | |
|---|---|
| Loan Number: | ▮▮▮▮ |
| FHA Case Number: | ▮▮▮▮ |
| Borrower Name(s): | BOHDAN MAKUCH |
| Property Address: | 1851 Meadowbrook Road<br>Abington, Pennsylvania 19001 |
| Note/Loan Amount: | $400,500.00 |
| Note/Loan Date: | 10/1/2012 |

*PAY TO THE ORDER OF:*

_____

WITHOUT RECOURSE

| | |
|---|---|
| Company Name: | Urban Financial Group Inc. |
| Signature: | *[signature]* |
| Name: | Miles Findley |
| Title: | Assistant Vice President |

Page 1 of 1                                    AllongeUrbanWholesale

 

**RECORDER OF DEEDS**
MONTGOMERY COUNTY

*Nancy J. Becker*

One Montgomery Plaza
Swede and Airy Streets ~ Suite 303
P.O. Box 311 ~ Norristown, PA 19404
Office: (610) 278-3289 ~ Fax: (610) 278-3869

MTG BK 13451 PG 00096 to 00107
INSTRUMENT # : 2012114113
RECORDED DATE: 11/13/2012 11:22:31 AM



**MONTGOMERY COUNTY ROD**

**OFFICIAL RECORDING COVER PAGE**  Page 1 of 12

| | | | |
|---|---|---|---|
| **Document Type:** | Mortgage | **Transaction #:** | 2760753 - 2 Doc(s) |
| **Document Date:** | 10/01/2012 | **Document Page Count:** | 11 |
| **Reference Info:** | makuch | **Operator Id:** | kleonard |

**RETURN TO:** (Mail)
COMMOMWEALTH REAL ESTATE
100 beecham dr
pittsburg, PA 15205-9756

**PAID BY:**
COMMOMWEALTH REAL ESTATE

**\* PROPERTY DATA:**
Parcel ID #:
Address:      1851 MEADOWBROOK RD

              ABINGTON  PA
              19001
Municipality:
School District:

**\* ASSOCIATED DOCUMENT(S):**

| **FEES / TAXES:** | |
|---|---|
| Recording Fee:Mortgage | $65.00 |
| Additional Pages Fee | $14.00 |
| Affordable Housing Pages | $14.00 |
| Rejected Document Fee | $5.00 |
| NonCompliance Fee | $25.00 |
| **Total:** | **$123.00** |

MTG BK 13451 PG 00096 to 00107
Recorded Date: 11/13/2012 11:22:31 AM

I hereby CERTIFY that this document is recorded in the Recorder of Deeds Office in Montgomery County, Pennsylvania.



**Nancy J. Becker
Recorder of Deeds**

# PLEASE DO NOT DETACH

THIS PAGE IS NOW PART OF THIS LEGAL DOCUMENT

NOTE: If document data differs from cover sheet, document data always supersedes.
*COVER PAGE DOES NOT INCLUDE ALL DATA, PLEASE SEE INDEX AND DOCUMENT FOR ANY ADDITIONAL INFORMATION.

RECORDER OF DEEDS
MONTGOMERY COUNTY
2012 OCT 31 AM 11: 51

RECORDER OF DEEDS
MONTGOMERY COUNTY
2012 OCT 18 AM 9: 34

RECORDER OF DEEDS
MONTGOMERY COUNTY
2012 OCT 31 AM 11: 50

RECORDER OF DEEDS
MONTGOMERY COUNTY
2012 NOV 13 AM 9: 23

Prepared by:
New Day Financial, LLC
8171 Maple Lawn Blvd, Suite 300
Fulton, MD 20759

Return To: Commonwealth Title
290 Bilmar Dr. Phila, PA 15205

FHA Case Number: [REDACTED]

MIN: [REDACTED]

Parcel ID #

Commonwealth of Pennsylvania

MONTGOMERY COUNTY COMMISSIONERS REGISTRY
ABINGTON
1851 MEADOWBROOK RD
MAKUCH BOHDAN & STEPHANIE                    $10.00
B 008  U 236  L 139  1101  DATE: 11/13/2012    AN

## FIXED RATE MORTGAGE
### (HOME EQUITY CONVERSION)
### THIS MORTGAGE SECURES A REVERSE MORTGAGE LOAN

THIS MORTGAGE ("Security Instrument") is given on October 01, 2012. The mortgagor is **BOHDAN MAKUCH SURVIVING SPOUSE**, whose address is **1851 MEADOWBROOK ROAD, ABINGTON, PA 19001** ("Borrower"). This Security Instrument is given to **New Day Financial, LLC**, which is organized and existing under the laws of **DELAWARE**, and whose address is **8171 Maple Lawn Blvd, Suite 300, Fulton, MD 20759** ("Lender"). *The mortgagee under this Security Instrument is Mortgage Electronic Registration Systems, Inc. ("MERS") (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of 1901 E. Voorhees Street, Suite C, Danville, IL 61834 or P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.* Borrower has agreed to repay to Lender amounts which Lender is obligated to advance, including future advances, under the terms of a Home Equity Conversion Loan Agreement dated the same date as this Security Instrument ("Loan Agreement"). The agreement to repay is evidenced by Borrower's Note dated the same date as this Security Instrument ("Note"). This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, including all future advances, with interest, and all renewals, extensions and modifications of the Note, up to a maximum principal amount of **Four Hundred Thousand Five Hundred and 00/100 Dollars** (U.S.$400,500.00); (b) the payment of all other sums, with interest, advanced under Paragraph 5 to protect the security of this Security Instrument or otherwise due under the terms of this Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. The full debt, including all amounts described in (a), (b), and (c) above, if not paid earlier, is due and payable on **March 10, 2083**. For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following described property located in **MONTGOMERY** County, Pennsylvania, which has the address of:

**1851 MEADOWBROOK ROAD, ABINGTON, PA 19001**, and is described more fully on Exhibit A attached to and hereby incorporated into this Mortgage ("Property Address").

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

*Pennsylvania 1st MERS Security Instrument (Fixed)*                                             © *Bay Docs, Inc. 06/10*
*Page 1*

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal and Interest.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note.

2. **Payment of Property Charges.** Borrower shall pay all property charges consisting of taxes, ground rents, flood and hazard insurance premiums, and special assessments in a timely manner, and shall provide evidence of payment to Lender, unless Lender pays property charges by withholding funds from monthly payments due to the Borrower or by charging such payments to a line of credit as provided for in the Loan Agreement.

3. **Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire. This insurance shall be maintained in the amounts, to the extent and for the periods required by Lender or the Secretary of Housing and Urban Development ("Secretary"). Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss to Lender, instead of to Borrower and Lender jointly. Insurance proceeds shall be applied to restoration or repair of the damaged Property, if the restoration or repair is economically feasible and Lender's security is not lessened. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied first to the reduction of any indebtedness under a Second Note and Second Security Instrument held by the Secretary on the Property and then to the reduction of the indebtedness under the Note and this Security Instrument. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

4. **Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence after the execution of this Security Instrument and Borrower (or at least one Borrower, if initially more than one person are Borrowers) shall continue to occupy the Property as Borrower's principal residence for the term of the Security Instrument. "Principal residence" shall have the same meaning as in the Loan Agreement.

Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

5. **Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all

*Pennsylvania 1st MERS Security Instrument (Fixed)* © *Bay Docs, Inc. 06/10*
*Page 2*

governmental or municipal charges, fines and impositions that are not included in Paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments. Borrower shall promptly discharge any lien which has priority over this Security Instrument in the manner provided in Paragraph 12(c).

If Borrower fails to make these payments or the property charges required by Paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in Paragraph 2.

To protect Lender's security in the Property, Lender shall advance and charge to Borrower all amounts due to the Secretary for the Mortgage Insurance Premium ("MIP") as defined in the Loan Agreement as well as all sums due to the loan servicer for servicing activities ("Servicing Fee") as defined in the Loan Agreement. Any amounts disbursed by Lender under this Paragraph shall become an additional debt of Borrower as provided for in the Loan Agreement and shall be secured by this Security Instrument.

6. **Inspection.** Lender or its agent may enter on, inspect or make appraisals of the Property in a reasonable manner and at reasonable times provided that Lender shall give the Borrower notice prior to any inspection or appraisal specifying a purpose for the inspection or appraisal which must be related to Lender's interest in the Property. If the Property is vacant or abandoned or the loan is in default, Lender may take reasonable action to protect and preserve such vacant or abandoned Property without notice to the Borrower.

7. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation, or other taking of any part of the Property, or for conveyance in place of condemnation shall be paid to Lender. The proceeds shall be applied first to the reduction of any indebtedness under the Second Note and Second Security Instrument held by the Secretary on the Property, and then to the reduction of the indebtedness under the Note and this Security Instrument. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

8. **Fees.** Lender may collect fees and charges authorized by the Secretary.

9. **Grounds for Acceleration of Debt.**
   (a) **Due and Payable.** Lender may require immediate payment in full of all sums secured by this Security Instrument if:
   (i) A Borrower dies and the Property is not the principal residence of at least one surviving Borrower; or

   (ii) All of a Borrower's title in the Property (or his or her beneficial interest in a trust owning all or part of the Property) is sold or otherwise transferred and no other Borrower retains (a) title to the Property in fee simple, (b) a leasehold under a lease for not less than 99 years which is renewable or a lease having a remaining period of not less than 50 years beyond the date of the 100th birthday of the youngest Borrower, or (c) a life estate in the Property (or retains a beneficial interest in a trust with such an interest in the Property).

   (b) **Due and Payable with Secretary Approval.** Lender may require immediate payment in full of all sums secured by this Security Instrument, upon approval by an authorized representative of the Secretary, if:
   (i) The Property ceases to be the principal residence of a Borrower for reasons other than death and the Property is not the principal residence of at least one other Borrower; or

(ii) For a period of longer than twelve (12) consecutive months, a Borrower fails to physically occupy the Property because of physical or mental illness and the Property is not the principal residence of at least one other Borrower; or

(iii) An obligation of the Borrower under this Security Instrument is not performed.

(c) **Notice to Lender.** Borrower shall notify Lender whenever any of the events listed in Paragraph 9(a)(ii) and (b) occur.

(d) **Notice to Secretary and Borrower** Lender shall notify the Secretary and Borrower whenever the loan becomes due and payable under Paragraph 9(a)(ii) and (b). Lender shall not have the right to commence foreclosure until Borrower has had thirty (30) days after notice to either:
(i) Correct the matter which resulted in the Security Instrument coming due and payable; or

(ii) Pay the balance in full; or

(iii) Sell the Property for the lesser of the balance or 95% of the appraised value and apply the net proceeds of the sale toward the balance; or

(iv) Provide the Lender with a deed in lieu of foreclosure.

(e) **Trusts.** Conveyance of a Borrower's interest in the Property to a trust which meets the requirements of the Secretary, or conveyance of a trust's interests in the Property to a Borrower, shall not be considered a conveyance for purposes of this Paragraph 9. A trust shall not be considered an occupant or be considered as having a principal residence for purposes of this Paragraph 9.

(f) **Mortgage Not Insured.** Borrower agrees that should this Security Instrument and the Note not be eligible for insurance under the National Housing Act within eight (8) months from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to eight (8) months from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. No Deficiency Judgments.** Borrower shall have no personal liability for payment of the debt secured by this Security Instrument. Lender may enforce the debt only through sale of the Property. Lender shall not be permitted to obtain a deficiency judgment against Borrower if the Security Instrument is foreclosed. If this Security Instrument is assigned to the Secretary upon demand by the Secretary, Borrower shall not be liable for any difference between the mortgage insurance benefits paid to Lender and the outstanding indebtedness, including accrued interest, owed by Borrower at the time of the assignment.

**11. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full. This right applies even after foreclosure proceedings are instituted. To reinstate this Security Instrument, Borrower shall correct the condition which resulted in the requirement for immediate payment in full. Foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with a foreclosure proceeding shall be added to the principal balance. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if:(i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two (2) years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the Security Instrument.

*Pennsylvania 1st MERS Security Instrument (Fixed)*
*Page 4*

© *Bay Docs, Inc. 06/10*

12. **First Lien Status.**
    (a) **Modification.** Borrower agrees to extend this Security Instrument in accordance with this Paragraph 12(a). If Lender determines that the original lien status of the Security Instrument is jeopardized under state law (including but not limited to situations where the amount secured by the Security Instrument equals or exceeds the maximum principal amount stated or the maximum period under which loan advances retain the same lien priority initially granted to loan advances has expired) and state law permits the original lien status to be maintained for future loan advances through the execution and recordation of one or more documents, then Lender shall obtain title evidence at Borrower's expense. If the title evidence indicates that the Property is not encumbered by any liens (except this Security Instrument, the Second Security Instrument described in Paragraph 13(a) and any subordinate liens that the Lender determines will also be subordinate to any future loan advances), Lender shall request the Borrower to execute any documents necessary to protect the priority of the lien status of future loan advances. Borrower agrees to execute such documents. If state law does not permit the original lien status to be extended to future loan advances, Borrower will be deemed to have failed to have performed an obligation under this Security Instrument.

    (b) **Tax Deferral Programs.** Borrower shall not participate in a real estate tax deferral program, if any liens created by the tax deferral are not subordinate to this Security Instrument.

    (c) **Prior Liens.** Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien or forfeiture of any part of the Property; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to all amounts secured by this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within ten (10) days of the giving of notice.

13. **Relationship to Second Security Instrument.**
    (a) **Second Security Instrument.** In order to secure payments which the Secretary may make to or on behalf of Borrower pursuant to Section 255(i)(1)(A) of the National Housing Act and the Loan Agreement, unless otherwise provided by the Secretary, the Secretary has required Borrower to execute a Second Note and a Second Security Instrument on the Property.

    (b) **Relationship of First and Second Security Instruments.** Payments made by the Secretary shall not be included in the debt under the Note unless:
        (i) This Security Instrument is assigned to the Secretary; or

        (ii) The Secretary accepts reimbursement by the Lender for all payments made by the Secretary.

    If the circumstances described in (i) or (ii) occur, then all payments by the Secretary, including interest on the payments but excluding late charges paid by the Secretary, shall be included in the debt under the Note.

    (c) **Effect on Borrower.** Where there is no assignment or reimbursement as described in (b)(i) or (ii) and the Secretary makes payments to Borrower, then Borrower shall not:
        (i) Be required to pay amounts owed under the Note, or pay any rents and revenues of the Property under Paragraph 19 to Lender or a receiver of the Property, until the Secretary has required payment in full of all outstanding principal and accrued interest under the Second Note; or

        (ii) Be obligated to pay interest or shared appreciation under the Note at any time, whether accrued before

*Pennsylvania 1st MERS Security Instrument (Fixed)*  © *Bay Docs, Inc. 06/10*
*Page 5*

or after the payments by the Secretary, and whether or not accrued interest has been included in the principal balance under the Note.

(d) **No Duty of the Secretary.** The Secretary has no duty to Lender to enforce covenants of the Second Security Instrument or to take actions to preserve the value of the Property, even though Lender may be unable to collect amounts owed under the Note because of restrictions in this Paragraph 13.

**14. Forbearance by Lender Not a Waiver.** Any forbearance by Lender in exercising any right or remedy shall not be a waiver of, or preclude the exercise of, any right or remedy.

**15. Successors and Assigns Bound; Joint and Several Liability.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender. Borrower may not assign any rights or obligations under this Security Instrument or under the Note, except to a trust that meets the requirements of the Secretary. Borrower's covenants and agreements shall be joint and several.

**16. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address all Borrowers jointly designate. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this Paragraph 16.

**17. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**18. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and this Security Instrument.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**19. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by this Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this Paragraph 19.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by this Security Instrument is paid in full.

*Pennsylvania 1st MERS Security Instrument (Fixed)*
*Page 6*

© *Bay Docs, Inc. 06/10*

20. **Foreclosure Procedure.** If Lender requires immediate payment in full under Paragraph 9, Lender may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Paragraph 20, including, but not limited to, attorneys' fees and costs of title evidence to the extent permitted by applicable law.

21. **Lien Priority.** The full amount secured by this Security Instrument shall have the same priority over any other liens on the Property as if the full amount had been disbursed on the date the initial disbursement was made, regardless of the actual date of any disbursement. The amount secured by this Security Instrument shall include all direct payments by Lender to Borrower and all other loan advances permitted by this Security Instrument for any purpose. This lien priority shall apply notwithstanding any State constitution, law or regulation, except that this lien priority shall not affect the priority of any liens for unpaid State or local governmental unit special assessments or taxes.

22. **Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed shall terminate and become void. After such occurrence, Lender shall discharge and satisfy this Security Instrument. Borrower shall pay any recordation costs. Lender may charge borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted by applicable law.

23. **Waivers.** Borrower, to the extent permitted by applicable law, waives and releases any error or defects in proceedings to enforce this Security Instrument, and hereby waives the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption.

24. **Reinstatement Period.** Borrower's time to reinstate provided in Paragraph 11 shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Security Instrument.

25. **Purchase Money Mortgage.** If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Property, this Security Instrument shall be a purchase money mortgage.

26. **Interest Rate After Judgment.** Borrower agrees that the interest rate payable after a judgment is entered on the Note or in an action of mortgage foreclosure shall be the rate payable from time to time under the Note.

27. **Obligatory Loan Advances.** Lender's responsibility to make Loan Advances under the terms of the Loan Agreement, including Loan Advances of principal to Borrower as well as Loan Advances for interest, MIP, Servicing Fees, and other charges shall be obligatory.

28. **Nominee Capacity of MERS.** MERS serves as mortgagee of record and secured party solely as nominee, in an administrative capacity, for Lender and its successors and assigns and holds legal title to the interests granted, assigned, and transferred herein. All payments or deposits with respect to the Secured Obligations shall be made to Lender, all advances under the Loan Documents shall be made by Lender, and all consents, approvals, or other determinations required or permitted of Mortgagee herein shall be made by Lender. MERS shall at all times comply with the instructions of Lender and its successors and assigns. If necessary to comply with law or custom, MERS (for the benefit of Lender and its successors and assigns) may be directed by Lender to exercise any or all of those interests, including without limitation, the right to foreclose and sell the Property, and take any action required of Lender, including without limitation, a release, discharge or reconveyance of this Security Instrument. Subject to the foregoing, all references herein to "Mortgagee" shall include Lender and its successors and assigns.

29. **Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and

*Pennsylvania 1st MERS Security Instrument (Fixed)*  © Bay Docs, Inc. 06/10
*Page 7*

supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.

[Check all riders that are applicable.]

| | Condominium Rider | | PUD Rider |
|---|---|---|---|
| | Shared Appreciation Rider | | Other |

This is a contract under seal and may be enforced under 42 Pa.C.S. Section 5529(b). BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses: _____

_____
BOHDAN MAKUCH (BORROWER)

### Notary Acknowledgement

**Commonwealth of Pennsylvania**

**County of MONTGOMERY**

On this, the ____ day of __October__, 20_12_, before me, __Stacey Pavlick__, the undersigned officer, personally appeared BOHDAN MAKUCH, known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument, and acknowledged that he executed the same for the purposes therein contained.

In witness whereof, I hereunto set my hand and official seal.

_____
Notary Public

[SEAL]

My commission expires: 12/6/15

```
NOTARIAL SEAL
STACEY PAVLICK
Notary Public
AMBLER BOROUGH, MONTGOMERY COUNTY
My Commission Expires Dec 6, 2015
```

*Pennsylvania 1st MERS Security Instrument (Fixed)*
*Page 8*

© Bay Docs, Inc. 06/10

## CERTIFICATE OF RESIDENCE OF MORTGAGEE

I, we certify that the address of the within-named mortgagee(s) is:

8171 Maple Lawn Blvd, Suite 300, Fulton, MD 20759

_____    NewDay Financial LLC
Mortgagee or Authorized representative of mortgagee(s)    Mortgagee
Print Name: Anuradha Benbo    Print Name: _____
Title (if not Mortgagee): Post Closing Manager

Pennsylvania 1st MERS Security Instrument (Fixed)    © Bay Docs, Inc. 06/10
Page 9